## JONES COUNTY LAND CO. *v.* FOX.

[83 South. 241, In Banc.  No. 20873.]

1. TAXATION. *Deputy sheriff may execute tax deed.*

A deputy sheriff is by virtue of his office, also a deputy tax collector, since by virtue of section 4694, Code 1906 (Hemingway's Code, section 3111), a sheriff is made by virtue of his office tax collector and by section 4664, Code 1906 (Hemingway's Code, section 4081), is authorized to appoint deputies with power to do all acts which he could do himself.

2. TAXATION. *Tax deed properly signed.*

A tax deed signed "Luther Hill, Tax Collector, by Amos Jordan, D. S.," is not void on its face by reason of the use of the letters "D. S.," since such abbreviation could only mean deputy sheriff."

3. TAXATION. *Tax deed prima-facie evidence of legal assessment and sale.*

A Tax deed is prima-facie evidence that the assessment and sale of the land was legal and valid. To overthrow this prima-facie showing, the burden of proof is upon the attacking party to establish an illegal procedure by the officer making the sale.

4. TAXATION. *Sales of adjoining lands assessed in different names.*

A purchaser of lands at a tax sale has the right to rely on the assessment roll showing the names of the owners rather than on the opinion of the tax collector as to ownership, and his rights cannot be ignored in an action to have his tax deed set aside as void on the ground that the tax collector made two sales of land constituting a single tract, where such tracts were owned by the same person, but the assessment roll had the two parcels assessed to separate owners.

5. PLEADING. *Answer not a denial. When.*

A statement in an answer to a cross-bill that complainant "is not advised as to the age of "W," one of the defendants to said cross-bill, but demands strict proof of the same," was not sufficient to put cross-complainant to proof; such a statement not being equivalent to a denial on information and belief.

6. TAXATION. *Right of redemption may be conveyed.*

The right given an infant by section 4338, Code 1906 (Hemingway's Code, section 6971), to redeem land sold for taxes within two years after attaining full age is a property right which the infant may convey by deed, and which right may be exercised by the infant's vendee or by any one for the infant within the time prescribed by statute.

7. TAXATION. *Redemption of undivided interest.*

Under Code 1906, section 4338 (Hemingway's Code, section 6972), so providing an infant owning an undivided interest in land sold for taxes, may redeem his undivided interest in land within two years after attaining his majority.

APPEAL from the chancery court of Jones county.

HON. G. C. TANN, Chancellor.

Bill of the Jones County Land Company against D. B. Fox. From a decree for defendant plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Shannon & Schauber,* for appellant.

There are four propositions presented by the record in this case for decision by this court to wit: 1. Was witness Jordan, the deputy sheriff, who sold the appellant the land at said tax sale, and also executed its deed to the same, a competent witness to impeach his own official acts? 2. Was the tax deed executed and delivered to appellant void because signed, "Luther Hill, Tax Collector, by Amos Jordan, D. S."? 3. Was the sale of the three forties in section 14 invalid under section 6962 of Hemingway's Annotated Mississippi Code 1917, because it was not sold with the forty in section 23 as one tract?

We submit that after appellant had introduced its tax deed it had made out a *prima-facie* case under section 1643 of Hemingway's Annotated Mississippi Code, 1917, which is in these words: "A conveyance made by a tax collector to an individual purchaser of land at a sale for taxes, and the list of lands sold to the state at such sale, shall be *prima-facie* evidence that the assessment and sale of the land were legal and valid."

It is elementary law that an official is an incompetent witness to impeach his own official acts, yet this is just what the lower court permitted witness Jordan to do over the objections of appellant. *Planters Bank* v. *Walker,* 3 S. & M. (Miss.) 409; *Shotwell* v. *Hamblin,* 23 Miss. 159; *Stone* v. *Montgomery,* 35 Miss. 106; *Mixon* v. *Clevenger,* 74 Miss. 67."

2. Was the tax deed executed and delivered to appellant void because signed, "Luther Hill, Tax Collector, by Amos Jordan, D. S."? This proposition was urged very earnestly by the counsel for appellee on the trial of the case in the lower court. However, we think the proposition is settled by the statutes under the chapter on Sheriffs in Hemingway's Annotated Mississippi Code 1917.

Section 3111 of said Code says: "The sheriff of each county shall be tax collector therein in case of the failure of the sheriff to quailfy as tax collector, within the same time allowed for taking the oath of office and giving bond as sheriff, he shall thereby vacate the office of sheriff, and the vancancy be filled according to law."

Section 3081 of the same code says: "Every sheriff shall have power to appoint one or more deputy sheriffs, and to remove them at pleasure . . . "

We can find no authority whatever authorizing the tax collector to appoint deputies; therefore, necessarily his deputy sheriffs are under the law, deputy tax collectors. However, in our opinion, this proposition has been finally disposed of in the case of *McKee* v. *Swalm,* reported in 81 Miss. on page 679, in which Justice WHITFIELD, after examining the statutes, cited, says: "After a careful consideration, we are of the opinion, clearly, that a deputy sheriff, is *virtue officii,* also deputy tax collector . . . "

3. Was the sale of the three forties in section 14 invalid under section 6962 of Hemingway's Annotated Mississippi Code 1917, because it was not sold with the forty in section 23, as one tract? The case relied on by counsel for appellee, and followed by the lower court, is the case of *Wilkinson* v. *Harrington,* 115 Miss. 637. We think the case now before the court and the case just cited can be easily distinguished.

While it is true that the northeast quarter of northeast quarter of section 23 adjoins the southeast quarter of the southeast quarter of section 14, and only a section line separates same, yet the facts in these cases are quite different.

At the time of the sale the lands in both sections were owned jointly by Mrs. B. M. Davis, Winnie McGilvary, Wirt McGilvary, and appellee D. B. Fox, who each owned an undivided one-fourth's interest in all of the land. We find the lands in section 14 were assessed to S. A.

McGilvary while the land in section 23 was assessed to Mrs. N. A. Davis; it is true witness Jordan testified that Mrs. N. A. Davis and S. A. McGilvary was one and the same person, but this could not be correct as the pleadings show that Mrs. McGilvary's first husband was named W. T. McGilvary, and if such was the case her initials must have been S. A. as the lands in section 14 were assessed to S. A. McGilvary; the land in section 23 was assessed to Mrs. N. A. Davis, yet her second husband's name was B. W. Davis; therefore, her initials could not have been "N. A." and yet have been "S. A." McGilvary. Another very material difference to this case and the Wilkinson case is that the lands in the latter case were owned by Wilkinson and assessed to him, while the lands in the case were owned by four parties, including appellee, at the time of the sale for taxes, and was not assessed to the four owners.

Even though Witness Jordan testified that he knew S. A. McGilvary and Mrs. N. A. Davis to be one and the same person yet she was not the owner of the tract, even though it had been assessed to her, and knowledge of the officer in making a sale was not notice to the purchaser in this instance. The lands in the two sections were assessed in different names, and did not belong to the parties to whom it was assessed.

We call the court's attention to the fact that the lands assessed in section 14, and the land assessed in section 23 were not assessed together, but on different pages of the assessment roll, and assessed under separate names did not make the tax sale invalid under said section 6962.

We also call the court's attention to the fact that appellee, who now claims to own the entire four interests in said land, owned, at the time of said tax sale an undivided one-fourth's interest in said land, and claims to have purchased the other three-fourths interest after the tax sale, and after he had due notice that the lands

had been sold for the taxes for the year 1913. We also call the court's attention to the fact that appellee bought the three-fourth's interest on the 30th day of November, 1914, but had not filed his deed for record at the trial of the case in January, 1919. In this connection we also call the court's attention to the order of the lower court (see page 27 of the record) setting aside the decree *pro confesso* and final decree in favor of appellant as to D. B. Fox, alone; it nowhere appearing at that time that D. B. Fox owned more than an undivided one-fourth's interest in said lands. Did the failure of the court to set aside said decree as to the three other defendants enure to the benefit of appellant?

We respectfully submit that this case should be reversed and remanded.

*C. S. Street* for appellee.

The decree appealed from should be affirmed for at least three reasons: 1. The tax deed is void, because it was not executed according to law. 2. The attempted sale of the land for taxes was void for the reason that it was not offered for sale in the manner provided by law. 3. The attempted sale of the land for taxes was void because there was an attempt made to make two sales of land constituting a single tract, assessed as the property of the same owner (though not in the same name) and should have been sold, or offered for sale as one tract, and not two tracts.

The three propositions will be discussed briefly in their order.

1. It will be noted that the tax deed in this case is signed and acknowledge this way: "Luther Hill, Tax Collector by Amos Jordan, D. S.,

The question involved is not whether there is any provision in law for the appointment of a deputy tax

collector for the tax deed is not even signed by a deputy tax collector but by a "D. S."

It shows on its face that the regular tax collector himself neither signed it nor acknowledge it: At most, the letters after Amos Jordan's name can mean nothing more than "deputy sheriff," though they might mean a thousand other things, and section 6966, Hemingway's Code, requires a tax deed to be signed by the tax collector—not by the sheriff. If the tax deed in this case had been signed. "Luther Hill, sheriff," it would have been void. How, then, can a tax deed be valid which is signed Amos Jordan, D. S., even if it be conceded that D. S. means deputy sheriff?

It is true that our court held in *McRee* v. *Swalm,* 81 Miss., 679, that a deputy sheriff is. by virtue of his office, also deputy tax collector; but that is not the point in this case and has nothing to do with it. The sheriff is also by virtue of his office as well as by statute, also tax collector, but notwithstanding this fact, a tax deed signed simply by the sheriff would be void, because he does not sell land for taxes as sheriff, but as a tax collector and the law requires him to execute deeds as tax collector, so, a deed signed by the deputy sheriff is not good, even though he might be deputy tax collector. The tax deed in *McRee* v. *Swalm, supra,* was signed: "Chas. MsNair, tax collector, by R. C. Applewhite, deputy;"—not "D. S." nor "deputy sheriff," but simply deputy following Chas. McNair tax collector, and of course the word "deputy" standing alone could refer to nothing except "tax collector" following McNair's name; but to add the letters "D. S." is to say that Amos Jordan was not executing the deed as deputy tax collector but as deputy sheriff. Then, too, it will be noted also that the deed in the McRee case was acknowledge before the chancery clerk by "R. C. Applewhite, deputy tax collector of Lincoln county," which is quite another story from that made by this record. Then, too, the

McRee case shows that there was no tax collector. The tax collector had died, and his successor had not been appointed, and under the statute the duties of the office devolved upon the deputy; and all of the acts of the deputy in such case are made valid by the statute referred to; but that is not the case made here; the regular tax collector was much alive and was available for the purpose of executing tax deeds. The McRee case was doubtless properly decided, for the reason that section 3079, Code 1906, requires the deputy to perform all the duties of the office in case the officer shall die. This statute is the real basis of the decision, and it was not necessary to have decided anything else, and that case is no authority against the contention of appellee in the case at bar, but rather supports it, for it is there said (quoting from Black on Tax Title): "Where the local statute authorizes the deputy county clerk to perform all the duties of the county clerk during the absence or disability of the latter or during a vacancy in his office, and the deputy, under these circumstances is called upon to execute a tax deed, it is proper for him to execute it in his own name, by describing himself and signing it as deputy and without naming the clerk as he derives his authority, not from his principal, but from the law, which clothes him with all the power of the clerk in the given case; or, rather, makes him the officer to perform that duty for the ocassion." "Tax deeds. like all other proceedings in tax sales, must have strict construction in favor of the tax payer." *Rainey* v. *Lumber Co.*, 91 Miss. 694.

2. The attempted sale of the land in this case was void, because the land was not offered for sale in the manner provided by law. Section 6962, Hemingway's Code, provides that: "On the first Monday of April, if the taxes remain unpaid, the collector shall proceed to sell the land, or so much and such parts of the land, of each delinquent tax payer, as will pay the amount of taxes due

by him, and all costs and charges, to the highest bidder for cash. He shall first offer forty acres, and if the first parcels so offered do not produce the amount due, then he shall offer another similar subdivision and so on until the requisite amount is produced, or until the land constituting one tract and assessed as the property of the same owner be offered.'' *Nelson* v. *Abernathy,* 74 Miss. 164.

And the Nelson case also holds that a sale void for this reason is not cured by the provision in the section that no error in conducting the sale shall invalidate it, nor by the provisions of section 4332, Code 1906, (sec. 6966, Hemingway's Code). There are other decisions to the same effect, but it is not deemed necessary to cite them. The point is well established.

Counsel for appellant, however, argues that the testimony of Amos Jordan, ''D. S.'' is incompetent, and cites authority that an officer may not be allowed to impeach his official acts. But, it is submitted that the testimony of the witness in no sense impeaches or contradicts the recitals of the tax deed. His testimony is not that he did not perform his official duty, but only tends to explain the manner in which that duty was performed. A case directly in point on this position is; *Stevens* v. *Reed,* 90 Miss. 344; *Mixon* v. *Clevenger,* 74 Miss. 67 (cited by counsel for appellant in the case at bar), is no authority to the contrary. The other cases cited by counsel on this proposition were not even referred to by Judge WHITFIELD.

3. The attempted sale of the land for taxes was void because there was an attempt to make two sales of land constituting a single tract and assessed as the property of the same owner.

The record shows the land involved in this suit is located in section fourteen, and was assessed as the property of S. A. McGilvary. The record also shows that at the same time the land here involved was at-

tempted to be sold, there was an attempt made to sell the northeast quarter of northeast quarter, section 23, in the same township and range, assessed as the property of Mrs. N. A. Davis. The land in section 23 adjoins that in section 14. The record shows this, and the court will take judicial knowledge of it, even if the record did not show it, but it does show it.

Now, the statute, section 6962, Hemingway's Code, provides that land constituting one tract and assessed as the property of the same owner, shall be offered, etc. It does not say that the property has to be actually owned by the same person or assessed in the same name, but merely that it be "assessed as the property of the same owner."

This record shows clearly that the lands in sections fourteen and twenty-three were "assessed as the property of the same owner;" not in the same name, it is true, but as the property of the same owner. Mr. Fox testified that S. A. McGilvary and Mrs. N. A. Davis was one and the same person, and the witness Jordan, who made the sale of the two tracts of land at the sale testified that he knew, at the time the sales were made, that S. A. McGilvary and Mrs. N. A. Davis was one and the same person.

The fact that she owned only an undivided interest in the land, or owned no interest at all, makes no difference. The thing that controls is that the lands were assessed as the property of the same owner, and constituted a single tract, and should have been sold as one tract. *Wilkerson* v. *Harrington,* 115 Miss. 637.

The reason for the rule is clearly stated by Judge STEVENS, in the *Wilkerson Case, supra,* when he says: "The primary purpose of the statutes is to collect the delinquent taxes and to do so with the least possible injury to the tax payer."

Then, too, regardless of how the land here involved was assessed, it, and that in section 23, belonged to

the same owner or owners, and the method adopted in the attempted sale for the delinquent taxes made it inevitable that all of the land in both sections would be sold, notwithstanding it was contiguous and constituted a single tract, and was the property of the same owner or owners, and the primiary purpose of the statute was entirely lost sight of; but, instead the method adopted, was the one to work the greatest possible injury to the tax payer, instead of the least possible injury. The method pursued resulted in. an attempted sale of all of the adjoining land in both sections; whereas, if the proper and legal way of selling the land had been followed, it may be that all taxes and costs due could have been secured without selling all of the land.

It is respectfully submitted that the case should be affirmed.

Stevens, J., delivered the opinion of the court.

In this case the Jones County Land Company, a corporation, was complainant and appellee the defendant and cross-complainant in the trial court. The bill is one for the confirmation of a tax title. Appellant on April 6, 1914, purchased from the tax collector of Jones county the south half of southeast quarter, and the northwest quarter of southeast quarter, section 14, township 6, range 11 west, and received therefor a tax deed, signed "Luther Mill, Tax Collector, by Amos Jordan, D. S." This deed was duly filed with the chancery clerk, and remained on file for two years, after which it was delivered to the purchaser.

The land involved in this litigation formerly belonged to W. T. McGilvary, who received a patent from the United States government, and he owned the land at the time of his death. At the time of the assessment and sale the land belonged to the widow and the three children of W. T. McGilvary, deceased, as tenants in

common. The widow subsequently married one B. W. Davis and the three forty-acre tracts of land here involved were assessed to S. A. McGilvary. W. T. McGilvary also owned the northeast quarter of northeast quarter, section 23, township 6, range 11 west, which immediately adjoined the lands which comprise the subject-matter of this suit. The forty in section 23 was separately assessed on the assessment roll to Mrs. N. A. Davis. On June 16, 1914, after the tax sale, J. L. McGilvary, one of the contenants, conveyed his undivided one-fourth interest to D. B. Fox, appellee, and Fox was made a party defendant to the original bill for confirmation. The appellant obtained a decree *pro confesso* and a final decree against all of the defendants except Fox. Appellee, Fox, filed his answer, denying all of the material allegations of the bill, and made his answer a cross-bill, in which he attacks the validity of the tax deed on three grounds: First, that the tax deed is void on its face because it is not properly signed and executed; second, that the attempted sale was void because the sheriff who attempted to make the sale did not offer the lands in separate forty-acre tracts as provided by the statute; third, because the tax collector did not consider and treat the four forty-acre tracts as constituting a single tract and as the property of the same owner, but attempted to make two sales in violation, as contended, of our statute.

It is also alleged in the cross-bill that the widow and the two other children on November 30, 1916, executed and delivered to appellee their warranty deed for the remaining three-fourths interest, and thereby appellee became the owner in fee simple of all the lands sued for; that at the time this deed was executed Wirt McGilvary was a minor; that the statutory period for redemption for the minor's interest had not expired, and that Mr. Fox, as assignee of the minor, had the right to redeem the minor's interest; and accordingly

appellee contends and prays the court that, if the tax deed be upheld, he be accorded the right to redeem an undivided one-fourth interest, and offers to do equity, and tenders unto the court the amount which the court finds to be necessary to redeem. The case was set down for hearing on bill, answer, cross-bill, answer to the cross-bill and proof.

On the trial of the case cross-complainant introduced Amos Jordan, the deputy sheriff and tax collector who made the sale, in an effort to show that this officer did not obey the statute in the method of sale. It appears that the cause was submitted on oral testimony taken before the chancellor, and that a stenographer was employed to take down the evidence. According to the stenographer's notes, Mr. Jordan on direct examination was asked the following questions, and made response thereto as follows:

"Q. When you sold the three forty's, how did you sell them  A. I would offer the west one-half of the southeast quarter for the taxes and costs of the three forty's, and I wouldn't get any bid, then I would offer the southeast of the southeast for the taxes and costs of the whole thing, and didn't get a bid, and then I would offer it all together and got a bid on it. Q. And that is the way you sold it? A. Yes, sir."

There was some controversy between counsel as to what the witness testified to on direct examination, and the court permitted the witness to be recalled for further examination, and on a subsequent examination the following appears:

"Q. When you sold the three forty's, in question, how did you sell them? just state what your testimony was relative to this. A. I would offer one forty for taxes and costs on the 3—that is my recollection—and I would offer one forty for taxes and costs on three forty's. If I wouldn't get a bid, then I would add another forty; and, if I didn't get a bid on these two, I would add the

third forty. That is the way it was done. That is what I intended to say down yonder. . .. . The way I sold it, I would offer one forty and if I couldn't get a bid, I would add another, and then, if I didn't get a bid, I would offer them all together. . . . I would offer the first one separately," etc.

There was a general decree for the defendant and cross-complainant, Fox, canceling the tax deed and dismissing the original bill, and from this decree the tax purchaser appeals.

In the argument at the bar, as also in the briefs, the same grounds upon which the tax deed was assailed in the court below are relied upon here. We shall take them up for consideration in the order in which counsel present them.

There is no merit, we think, in the first contention that the tax deed is void on its face. The deed is executed in the name of Luther Hill, Tax Collector, by Amos Jordan, D. S. In *McReae* v. *Swalm*, 81 Miss. 679, 33 So. 503, this court, speaking through Chief Judge WHITFIELD, said: "After a careful consideration, we are of the opinion, clearly, that a deputy sheriff is *virtute officii*, also deputy tax collector."

By statute (section 4694, Code of 1906; section 3111, Hemingway's Code) the sheriff of each county is, by virtue of his office as sheriff, made tax collector, and if the sheriff fails to qualify by giving the bond required as tax collector, he vacates his office as sheriff. The sheriff is by a separate statute given power to appoint one or more deputy sheriffs and to remove them at pleasure, and such deputies "shall have authority to do all the acts and duties enjoined upon their principals." Section 4664, Code 1906 (section 3081, Hemingway's Code).

The record in this case shows, not only how the deed was signed, but that Luther Hill was the tax collector of the county, and that Amos Jordan was acting as

a regular deputy sheriff and tax collector in making the tax sale here questioned. The abbreviation or letters "D. S." can mean nothing else except deputy sheriff. Mr. Jordan was put upon the stand as appellee's witness to show the method and manner of sale in this case and thereby removed any possible doubt as to the indentity of the party purporting to act as deputy. It is conceded that the recitals of the deed are in usual form, and the only alleged infirmity is in the signature.

It is next contended that the sale was void because the land was not offered for sale in the manner provided by section 4328, Code of 1906. Section 6962, Hemingway's Code, providing among other things that the tax collector "shall first offer forty acres, and if the first parcel so offered do not produce the amount due, then he shall offer another similar subdivision and so on until the requisite amount be produced, or until all the land constituting one tract and assessed as the property of the same owner be offered."

This objection is based upon the assumed fact that the tax collector did not first offer forty acres. The statement which Mr. Jordan made as a witness on his first or direct examination tended to uphold this allegation of the cross-bill, but there was some controversy between counsel as to what the witness said or intended to say on this point, and by permission of the court the witness was reintroduced, and thereupon made a definite and detailed statement as to the exact method he pursued in offering the land for sale, and upon the re-examination the positive testimony of the tax collector supports the validity of the sale.

Appellant as complainant introduced its tax deed, and this conveyance is *prima-facie* evidence that the assessment and sale of the land was legal and valid. To overcome this *prima-facie* showing the burden of proof was upon the cross-complainant to establish an illegal procedure by the officer making the sale. The testimony of

the officer taken as a whole does not meet the burden thus cast upon the cross-complainant, and the conveyance of the tax collector upon the showing made by this one witness must be upheld. No other witness testified on this point. The final statement of the witness is definite on the point that he did in fact first offer forty acres, and, not receiving a bid upon the first forty, he then offered another similar subdivision, and so on until all three forties were offered as a whole.

The third ground of attack is based upon the theory that the tax collector made two sales of land, constituting a single tract and assessed as the property of the same owner, in violation of the quoted sections of the statute. It is contended that the lands involved in this suit in section 14 joined the northeast quarter of the northeast quarter of section 23, in the same township and range, then owned by the same parties who were the owners of the lands embraced in the tax deed involved in the present inquiry, and that all four forties should have been considered as a single tract and as the property of the same owner. In his oral examination the deputy sheriff stated that S. A. McGilvary and Mrs. N. A. Davis is the same party. The lands involved in this suit, it will be remembered, were assessed to S. A. McGilvary, while the forty acres in section 23 were assessed to Mrs. N. A. Davis. Under the testimony, conceding that S. A. McGilvary and Mrs. N. A. Davis is the same party, there was an error on the assessment roll in the initials of Mrs. Davis. Her first husband was W. T. McGilvary, and her second husband, B. W. Davis. She could not therefore have been S. A. McGilvary and N. A. Davis. From all that appears on the assessment rolls there was separate ownership. The statute says, "All the land constituting one tract and assessed as the property of the same owner." If, then, the assessment roll must govern, the tax collector was right in making a separate sale of the forty acres in section 23.

Appellee relies upon the decision of this court in the case of *Wilkerson* v. *Harrington*, 115 Miss. 637, 76 So. 563, and counsel state that the learned chancellor relied upon and followed the opinion in this case. We are of opinion that the chancellor went beyond the point decided in *Wilkerson* v. *Harrington*, and that the result reached by him would necessarily rest upon the private opinion of the tax collector as to the ownership of the separate parcels of land. It would not be based upon the assessment roll. In the Wilkerson Case all the land was correctly assessed to Mr. Wilkerson, and the fact of his ownership appeared on the assessment roll. The statute does not authorize the tax collector to make one sale of lands assessed to separate owners or even to embrace in one sale lands assessed to different names or persons whether owners or not. On this point we hold that the assessment roll must govern. This is in effect the declaration of Chief Justice Woods, speaking for this court in *Higdon* v. *Salier,* 76 Miss. 769, 25 So. 865, where he observed:

"The statute is plain that all the land constituting one tract, and assessed to the same owner, may be sold if the requisite amount cannot be produced by the offer of subdivisions of the land, but it was never in contemplation that a collector; acting on his private opinion touching the constitution of separate parcels making one tract, or of the ownership of separate parcels, and utterly disregarding what was clearly shown on the assessment roll, might unite the lands of two distinct owners of separate tracts and sell all for the taxes unpaid of one or the other or both of the owners."

As a matter of fact none of the lands in this case were assessed to all of the real parties in interest. The lands at the time of the sale belonged to Mrs. Davis, and her three children as tenants in common.

We adhere to the ruling in *Wilkerson* v. *Harrington,* but regard that case as easily differentiated from the

case at bar. The rights of the purchaser cannot be ig-
nored, and to disregard the probabilities and appear-
ances as gathered from the assessment roll and rely
upon the private opinion or knowledge of the tax collec-
tor would involve tax sales in much doubt.

On all grounds of attack the conveyance must be up-
held. On this, the main point, appellant is entitled to a,
reversal and a decree here. But on the right of appel-
lee to redeem the undivided one-fourth interest of Wirt
McGilvary, the cause should be remanded. In opposition
to the right of redemption, appellant contends that
the allegation of the cross-bill as to the minority of Wirt
McGilvary is not supported by proof. The cross-bill in
explicit terms charges that Wirt McGilvary was a minor
at the time of the sale, and that the time for redemption
had not expired when he sold and conveyed his interest
to appellee. In the answer to the cross-bill appellant
stated: ''It is not advised as to the age of said Wirt
McGilvary, one of the defendants of said cross-bill,
but demands strict proof of the same.''

This was not sufficient to put cross-complainant to
proof. There could be no trial without a real issue, and
appellant as defendant to the cross-bill should at least
have denied this material allegation on information and
belief. *Hopper* v. *Overstreet,* 79 Miss. 241, 30 So. 637.

By section 4338, Code of 1906 (section 6972, Heming-
way's Code), infants and persons of unsound mind are
given ''the right to redeem the same within two years
after attaining full age or sanity, from any purchaser
thereof, on the terms herein prescribed, and on their
paying the value of any permanent improvements,''
etc. This right, said the court in *Moody* v. *Hoskins,* 64
Miss. 468, 1 So. 622, is something more than mere grace,
a right which the legislature after a sale for taxes
cannot take away or destroy. Judge CAMPBELL in this
case speaks of the estate acquired by a tax purchaser
as ''a conditional or contingent one, which was liable to

be defeated and divested by the redemption of the land as prescribed.''

The statute says that the owner of the land or ''any person for him'' may redeem it; and, after the tax deed has been delivered, infants may on the same terms redeem from any purchaser thereof,'' and the right may be exercised within two years after attaining full age. *Wilson* v. *Sykes,* 67 Miss. 617, 7 So. 492, upholds the right of infants owning an undivided interest to redeem only their portion of the land.

We regard the right then as a property right which infants may convey by deed and which may be exercised by the infant's vendee or by any one for the infant within the time prescribed by statute. Any question as to the amount necessary to redeem is not presented, and must be left to the chancellor upon further consideration of the case.

The decree appealed from will accordingly be reversed, and a decree entered here confirming the tax title of appellant to an undivided three-fourths interest in the lands involved in this suit, but remanding the cause solely upon the issue as to cross-complanant's right to redeem the undivided interest of Writ McGilvary, with directions that the necessary amount be ascertained and fixed by the chancellor, and such further proceedings had as may be appropriate upon this issue.

*Reversed and remanded.*